## Case No. 6,213.

### HATHAWAY v. ROACH.

[2 Woodb. & M. 63.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1846.

PATENTS—TAXABLE COSTS— MODELS—DEPOSITIONS NOT USED—TRAVELING EXPENSES—ACTS OF CONGRESS ON COSTS.

1. No act of congress is in force, which in terms gives costs to the prevailing party.

[Cited in Jordan v. The Agawam Woolen Co., Case No. 7,516; Ethridge v. Jackson, Id. 4,541.]

2. But several acts recognise the existence of the right of such a party to costs generally; and several specify the fees, which shall be paid to certain officers, jurors, and witnesses. It is doubtful whether the act of March 1, 1793 [1 Stat. 333], which allowed to parties such compensation for travel and attendance and attorney's fees as were given in the superior courts of the respective states, is now in force.

[Cited in The Baltimore v. Rowland, 8 Wall. (75 U. S.) 388; Spaulding v. Tucker, Case No. 13,221; Jerman v. Stewart, 12 Fed. 274; U. S. v. Treadwell, 15 Fed. 532; The Vernon, 36 Fed. 115; Trinidad Asphalt Paving Co. v. Robinson, 52 Fed. 348; The Advance, 60 Fed. 423.]

3. But the 34th section of the judiciary act [of 1789 (1 Stat. 92)], settling the rights of parties in the courts of the United States by the laws of the states, when not provided for by congress specially, is broad enough to cover the rights of parties to costs; and this construction is strengthened by a contemporaneous construction, and a practice since of half a century conforming to it.

[Cited in Burnham v. Rangely, Case No. 2,177; Dennis v. Eddy, Id. 3,793. Approved in Ethridge v. Jackson, Id. 4,541. Cited in Cooper v. New Haven Steam Boat Co., 18 Fed. 589.]

4. There are, also, several rules of the supreme court of the United States, and of the circuit court, besides several acts of congress, which recognise the general right of the prevailing party to costs.

[Cited in Edwards v. Bond, Case No. 4,294.]

5. Where neither the laws of a state, nor the acts of congress provide for the allowance of any particular item of costs, it is to be taxed only when relating to the competent evidence in the case, and connected with what is appropriately a matter of cost rather than damages, and expenses in preparing a cause.

6. The court must use a sound discretion as to such items, and allow in amount only a reasonable compensation.

7. Models, like the plaintiff's, in a suit for violating a patent, obtained by the defendant, are a proper item, as they are evidence, and the plaintiff is not obliged by law to produce them. Models of other patents are not taxable.

[Approved in Woodruff v. Barney, Case No. 17,986. Cited in Hussey v. Bradley, Id. 6,946a; Wooster v. Handy, 23 Fed. 60, 62.]

8. Copies of the patent of the plaintiff procured by the defendant are not taxable, as the plaintiff is bound to produce them. But copies of assignments of the patent, procured by the defendant, are taxable, as they are evidence, and often important, and the plaintiff is not bound to produce them. A deposition, properly taken, cannot be taxed if the party taking it did not use it, but put the witness on the stand and taxed him as attending.

9. If a case is suspended for a few days, and postponed by agreement of parties, and not by order of the court, except to carry the agreement into effect, the witnesses will not be allowed another travel, unless it was a part of the agreement, but their continued attendance till discharged will be allowed in such case. In the courts of the United States witnesses are entitled to travel "from the places of their abode," by the act of congress, though beyond the line of the state, unless otherwise agreed by the parties.

[Cited in Burnham v. Rangely, Case No. 2,177; Woodruff v. Barney, Id. 17,986; U. S. v. Sanborn, 28 Fed. 301; Burrow v. Kansas City, Ft. S. & M. R. Co., 54 Fed. 281; Pinson v. Atchison, T. & S. F. R. Co., Id. 465.]

[Cited in Alexander v. Harrison, 2 Ind. App. 53, 28 N. E. 119.]

This was an action [by Joshua G. Hathaway against William Roach] for a violation of a patent of the plaintiff for a two-flue stove for cooking. [Patent No. 505, granted Dec. 7, 1837.]

At the trial here at this term, several rulings were made, and the cause not finished as to the testimony when the plaintiff became nonsuit. But the case had been on trial between two and three weeks before the nonsuit, and by agreement between the parties, without any order from the court except to acquiesce in the agreement, the trial had been suspended and postponed for about ten days, after it had been in progress four or five days. The defendant's bill of costs was taxed and revised by the clerk, but containing several items, which, though objected to by the plaintiff, were retained by the clerk, the objections were heard at the adjourned term. As they will fully appear in the judgment of the court on them rendered at the same session, they need not be detailed here.

B. R. Curtis, and Mr. Whiting, for plaintiff. Rand & Choate, for defendant.

WOODBURY, Circuit Justice. Most of the different objections to the bill of costs in this case are to items not specially provided for by any statute. If allowed at all, then, it is to be from considerations of what is reasonable and equitable, or the practice of courts rather than any positive statutes, or adjudged precedents, which are reported either in this state or the United States. It is a little extraordinary that no act of congress gives any express direction for taxing any of the items in controversy, except perhaps one, and that very few directions exist in any such acts, unless as to the fees of marshals, clerks, and jurors, and those of a general character for witnesses. It is still more extraordinary, that there is no act of congress expressly enacting that costs generally shall be given to either party, but several merely specify some particulars as first remarked, which may be taxed for particular officers and persons. It is to be inferred, however, from a uniform practice over half a century, that the prevailing party in civil actions in the courts of the United States is to recover his cost to some ex-

---

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

tent or other; and several provisions by congress as well as some rules of the supreme court, no less than of this, seem clearly to recognise such a right as existing by law. Thus, in the 71st section of the act of March 2, 1799 (1 Stat. 678), a revenue officer, prosecuted without sufficient cause, is entitled to recover double costs. So the act of March 1, 1793, c. 20, § 4 (1 Stat. 333), gave "in favor of parties obtaining judgments" in courts of the United States, such compensation "for their travel and attendance" and for attorneys' and counsellors' fees as were given in the superior courts of the respective states. But this act was to be in force only one year, and till the end of the next session of congress, and was not extended or revised till by act of March 31, 1796 (1 Stat. 451). It was then continued in force two years longer, and till the close of the next session. But no express renewal was then made. When the act of February 28, 1799 [1 Stat. 624], was passed, it omitted in terms to make this provision perpetual. But it was probably designed to make the act as an act perpetual; because it expressly repealed the third section of it. And the courts and the profession have ever since acted on the premises as if the rest of the act was operative, and they have allowed or withheld those fees for attendance and attorneys as the state laws or superior courts under them did. See Sebring v. Ward [Case No. 12,598], and Foster v. Swasey [Id. 4,984], at this session. But whether this be considered as legally done under these acts, or some others, if at all, is not very clear. I have recently held in the case last named, (Foster v. Swasey) that it is not to be justified, as was there supposed by counsel under the acts of congress in relation to process. Though this court is bound to conform to those process acts, even where final discharges are made under them, (U. S. v. Knight [Id. 15,539]; [Beers v. Haughton] 9 Pet. [34 U. S.] 329), yet the taxation of cost is not a "process" or "precept," but rather a right given or refused by state laws, or those of the United States.

Further, respecting the legislation by congress as to costs, it will be seen that the act of congress of February 28, 1799, expressly fixes the fees for witnesses in their travel and attendance per mile and per day. 1 Stat. 626. So costs are given against defendants in criminal cases. Section 5, Act May 8, 1792 [1 Stat. 275]. So in prosecutions for penalties (Act May 8, 1792; 1 Stat. 275), as existing in the different states, and sometimes against plaintiffs. So the act of July 22, 1813, authorizes the consolidation of suits and costs, where several are instituted. 3 Stat. 19. So in admiralty and equity cases, the "rates of fees" shall be allowed as in the states in like courts and cases. 1 Stat. 94; Act September 29, 1789. See, also, 2 Stat. (by Story) 65, § 23. So the 20th section of the judiciary act restricts the plaintiff from receiving cost at all, unless he re-

covers as much as $500 debt or damages, and subjects him in such case to cost in the discretion of the court. 1 Stat. 83. This raises a strong implication, that in other cases the plaintiff is entitled to cost; and enacts expressly, that the defendant may receive them in the particular case described. Again, the 34th section of this same judiciary act provides, that the laws of the different states shall be the guide to this court in settling the rights of parties where no provision is made by the constitution or acts of congress. This is probably the most material express provision, covering this inquiry, as it is broad enough to embrace cost. It is no very forced construction to suppose, that this applies to the rights to costs as well as to the rights connected with the merits in controversy on the pleadings. As first remarked, the right to costs is often very valuable. At all events, it is understood to have been the practical usage by the courts of the United States to conform to the state laws as to costs, when no express provision has been made and is in force by any act of congress in relation to any particular item, or when no general rule of court exists on this subject. Hence that may be deemed a contemporaneous construction of this and the other acts of 1799 before referred to, which, having been made or conformed to for half a century, should not now be departed from without new legislation. Besides this, in the various reported cases, which exist in relation to costs in those courts, it seems to have been taken for granted, that either under the judiciary act or some others, they are to be allowed, and generally as the laws of the different states provide, where congress has not legislated. See Sebring v. Ward [supra]; Bowne v. Brown [Case No. 1,743]; The Antelope, 12 Wheat. [25 U. S.] 549. The only exceptions to this are, that costs are by various decisions, and by a rule of the supreme court, never awarded against the United States (see Rule 45; [U. S. v. La Vengeance] 3 Dall. [3 U. S.] 301; U. S. v. Barker, 2 Wheat. [15 U. S.] 395; [U. S. v. Hooe] 3 Cranch [7 U. S.] 73; [U. S. v. Whart. 346; [U. S. v. Ringgold] 8 Pet. [33 U. S.] 150; 8 Greenl. 106); or against a state (2 Tyler, 44; 4 Gill & J. 507; 4 How. [45 U. S.] 639). And that they are not given where the court possess no jurisdiction over the subject-matter. See the cases collated in Burnham v. Rangely (Me. Dist. May Term, 1847) [Case No. 2,177].

The rule of the common law, which gave no costs, has not prevailed in this court or in Massachusetts. 2 Inst. 288; Jackson on Real Actions, 99. But rather the statute of Gloucester, which allowed costs in cases of damages, and which being a portion of the laws of England when our ancestors emigrated hither, came with them. It was a part of their birthright, and applicable to their condition here, and practised on, if it had not been expressly re-enacted in Massachusetts either as a colony or a state. See Owners of the De Soto v. Owners of the Luda, 5

How. [46 U. S.] 441, opinion of the minority; State v. Rollins, 8 N. H. 550. Also, U. S. v. New Bedford Bridge (Mass Dist. Oct. Term, 1846) [Case No. 15,867]. If it has been altered in any particular in Massachusetts by any express statute, which may relate to this inquiry, it is only to give costs to "the party prevailing" in all cases of trials, under certain express exceptions, and hence to prevent other exceptions from being made which are accustomed to be elsewhere. Costs are now, by virtue of statute, allowed in Massachusetts in all cases, jurisdiction or otherwise, as in all there is a party prevailing. Hunt v. Inhabitants of Hanover, 8 Metc. [Mass.] 343; 7 Metc. [Mass.] 591. The statute supposed to sanction this is that of 1786 (chapter 121), which gives costs, in terms, in "all civil actions to the party prevailing." This is contrary, however, to the general rule in most of the states, and the decisions in the federal courts, where no jurisdiction exists over the subject-matter, and can be justified only by a broader construction of the Massachusetts statute than is usual in like cases. See Burnham v. Rangely [supra].

The practice to allow costs in ordinary cases to the successful party, extends in most of the states, even beyond the Statute of Gloucester, as that gave them only where damages were recovered, and as an increase or increment to the damages. 3 Bl. Comm. 399. But by 23 Hen. VIII. c. 15, the defendant was also allowed costs on a nonsuit or verdict in his favor. So 8 Eliz. c. 2, and various others since as to both plaintiff and defendant. See 1 Har. Dig. 1715, "Costs;" 2 Tidd, Pr. 864, some cases early as 52 Hen. III. In time in England, where the plaintiff would be entitled to cost, the defendant was, if recovering. In Greetham v. Theale, 3 Burrows, 1723. All the statutes passed in England before the emigration of our ancestors, when suited to our condition, became in force here as much as the common law. (See cases, ante.) Thus, in Massachusetts, and like the civil law, the rule is, without respect to damages, "vinctus, victori in expensis condemnatus est." They go to the party, prevailing on the whole, though failing as to a part. Williams v. Wright, 1 Wend. 277. Some of the rules of this court tend to sustain these views. The 41st seems to authorize the prevailing party to have his cost as is the provision in the Massachusetts statutes. So the 10th and 11th rules. So the 45th rule of the supreme court of the United States expressly recognises the right of the prevailing party to costs, except against the United States, and so do the 20th and 37th.

These inquiries need not be protracted, as they have been pursued far enough to show the propriety of allowing some cost to the prevailing party in this court, though not expressly provided for in the present case by any special act of congress. We seem justified, therefore, to make the amount and

items of cost in the state courts, the general guides where no acts of congress give specific directions as to those amounts or items. But the courts of Massachusetts are not directed by any positive statute how to act in respect to several of the items objected to here. Nor is their practice in respect to such items known to the counsel, if these items have ever been called to the notice of the state courts. What then is proper to be done under such circumstances, as to those particular items? In cases of admiralty, it has been laid down, that costs and expenses are to be allowed according to the "sound discretion" of the court in items not regulated by any statute. Canter v. American & O. Ins. Co., 3 Pet. [28 U. S.] 319. Looking to long usage here and elsewhere in some such items of costs, all courts may be said to possess discretion as to the amount, as well as the allowance of them. Yet where they have such a discretion, it must not be a wild and lawless one, but governed by fixed rules, and appropriate principles, connected with the subject of costs. Nor can it be exercised with a view to full indemnity as to every expense to a party, involved in litigation, which in its very nature ever has been and always will be in many respects ruinous. The true course is not to attempt to make the party prevailing "whole," as it is termed, for all his various items of expense and trouble; for that would be vain, without much further legislation in most cases of parties involved in litigation. But now it is so far expressly provided for and to be obeyed, that in some cases double costs are by law expressly allowed; that in others, some of the costs and expenses are permitted to be compensated in the award of damages by the jury (Allen v. Blunt [Case No. 217]; and that in others the court is specially empowered in its discretion, as in patent cases, to treble the damages. Without such an express provision in England, courts in their discretion have allowed actual expense and loss of time paid to medical men and attorneys for attendance as witnesses beside the usual fees, but have refused it to all others, such as experts and men of science. 2 Doug. 438; 3 Car. & P. 212; 5 Maule & S. 156; 4 B. Mon. 300; Lyon v. Wilkes, 1 Cow. 591. In this country I am not aware that any courts without statute have gone so far as this, where some fees, though insufficient, have been prescribed expressly. In the case of The Antelope, 12 Wheat. [25 U. S.] 547, it seems to have been held, that where no act of congress, or law of a state regulated an item of cost, "its amount or allowance was to depend on the discretion of the court taking care to make" a "reasonable compensation" and that only. This is a very broad principle, and I should hesitate to carry it out in all things, and in all views of the subject. But, limiting it to matters suitable for bills of cost, and necessary in the case or proper as evidence, whether in its prosecu-

tion or defence, it may be the best guide in the absence of express and detailed legislation as to many items. 6 Moore, 235. Let us, then, by this rule, test the different items which are here excepted to, and not in any way provided for by the state laws or by congress.

The first objection is to the double travel, charged for witnesses, who attended at only one term, but attended before and after a postponement, made within that term by agreement of the parties, and for the accommodation of the counsel of the defendant. Had the witnesses come in twice at different periods, and by order of the court, as jurors sometimes do, it would seem to be reasonable, as such an order is presumed to be for the public convenience, to pay the witnesses for two travels. The jurors generally are allowed them in such cases. But when the witnesses come in twice at the same term on account of a postponement by agreement of the parties, and not by any order of the court and not on public account, the payment of a second travel to them should depend on the agreement, if it covers the case. And if it does not cover the case, it seems to me, that the presumption of law and fact must be that the witnesses should continue their attendance, and be paid for it till they were discharged by the parties or the court.

The next objection is, that an agreement was then made between the parties, not to bring in new witnesses after the adjournment from a distance, specifying Albany in New York, for an example, as to distance; and that some were brought from beyond, from Buffalo or Canada, and ought not therefore to be taxed. The allowance of these witnesses, if they actually attended, and before the plaintiff became nonsuit, though not examined, is usual. 11 Pick. 241; 5 Scott, 410; 3 Smith, 361; 11 Price, 511; 2 Chit. 200. If the plaintiff does not object for want of so early an attendance as the disposition of the trial by a nonsuit, the allowance depends entirely on the agreement. If that is proved satisfactorily to the clerk as above described, then they should not be taxed for the whole distance, but if not so proved, they must be allowed. Such an allowance, however, is unusual in this state, so as to be paid travel beyond the line of the state. Melvin v. Whiting, 13 Pick. 184; 1 Metc. [Mass.] 293. And hence, if by the practice in this court, travel still further has been accustomed to be paid in this district in cases at law, as the act of congress expressly says, from the "place of abode" (1 Stat. 626), it would be very natural for the parties to make an agreement to obviate this departure from the rule, which prevails in the state. As I understand this act of congress of February 28, 1799, it is imperative on this point, and travel has been allowed beyond the line of the state in such cases by my predecessor after full hearing and deliberation. Whipple v. Cumberland Manuf'g Co.

[Case No. 17,515]. But for these considerations, I of course should not feel inclined, as to any of the distant witnesses, to depart from what is considered the law of the state, in respect to such travel.

The next objection is to the items of models of stoves procured and used by the defendant. If these were models of the stoves, described in the plaintiff's patent, it is my opinion, contrary to that of the counsel for the defendant, that the plaintiff was not bound by any law to produce them. The defendant might then properly and usefully obtain them. They were likely to be beneficial in explaining the patent, and were competent evidence of its coincidence or difference, compared with other stoves; as they related to doings of the plaintiff himself on the subject of his patent. For such models the defendant ought, therefore, to be allowed a "reasonable compensation." This must be what it was actually worth to make them, and not of course what was in fact given for them, though that may be primâ facie the standard. If other models are taxed, I do not think them proper items for the bill of costs, any more than the drawings of other patents procured, or the books which describe them, they all being rather arguments than proofs. Baily v. Beaumont, 11 Moore, 387. This is the analogy in respect to maps and surveys of land, and the allowance for them, as those of the land in dispute are only to be taxed by ordinary practice in some states, because such alone are evidence in the cause.

In the next place an objection is made to the cost of copies of various assignments by the plaintiff. But as it was a part of the defence, contemplated before closing, to show that the plaintiff had not retained an interest, which authorized him to recover, I think, that the defendant acted discreetly in procuring these copies. They were competent and proper evidence in respect to such a defence, and the legal charge for them should therefore be taxed. 5 Pick. 540. In England the expense of getting them is also allowed sometimes. 1 Alc. & N. 144; 2 Cowp. 548. Nor was he bound, as is argued, to ask first the plaintiff's admission as to these assignments, as he may have resided at a great distance; and the defence have been first thought of, when it would be too late to ask those admissions, and, if refused, to procure the copies before the trial. But as to a copy of the plaintiff's patent, I think that need not have been procured by the defendant, as the plaintiff was bound by law to offer it in evidence, could not proceed at all without so doing, and hence it was not needed in order to be used as evidence by the defendant. But I can readily see, that the defendant might want it for himself and counsel, in order to examine critically what he was to defend against. That, however, was a want not for proof, but preparation and argument; and like all such documents, is not generally taxed in the bill of

cost, but borne by each party for himself. Thus, in England, experiments made to test a patent for clarifying sugar, cannot be taxed as cost. 6 Moore, 235; 3 Brod. & B. 72. It is said, also, that in one instance a deposition is taxed of a witness, who was examined on the stand. If this be so, although the deposition was properly taken, yet if the party chose in the end to dispense with it, and examine the witness before the jury, it is well settled in general practice, that it cannot be taxed. Lamb v. Stone, 11 Pick. 527. It is unreasonable, likewise, that the party should be subjected to pay the expense of the travel and attendance of a witness who did testify at the trial, and, besides that, pay for the deposition of the same witnesses, which was not used at the trial. I believe these remarks will dispose of all the objections made, and the clerk will settle the bill of cost finally in conformity to them.